UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

---

MICHAEL STINSON, an individual,

Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC; and Does 1-50, inclusive,

Defendants.

No. 2:16-cv-01903-MCE-GGH

**MEMORANDUM AND ORDER**

---

Presently before the Court is Plaintiff Michael Stinson's ("Plaintiff") application for Temporary Restraining Order ("TRO") against Defendant Specialized Loan Servicing, LLC ("SLS") to prevent the foreclosure sale of his home located at 1780 Birchwood Lane in Tracy, California, scheduled for November 6, 2017. Plaintiff filed his application on October 31, 2017; Defendant filed an opposition on November 2, 2017; and Plaintiff replied on November 3, 2017. With the sale of his home scheduled for Monday, November 6, the Court granted Plaintiff's application by Minute Order on November 3, expressly providing that the application was granted in order to provide the Court with sufficient time to review the parties' filings, and that a formal order would follow. The following is the Court's formalized Memorandum and Order granting Plaintiff's application for TRO.

1

**BACKGROUND**

According to Plaintiff's First Amended Complaint ("FAC"), SLS began servicing Plaintiff's existing home loan at least as of December 2014. In or around December 2014, Plaintiff sought a loan modification with SLS. The Court will not recite all facts surrounding Plaintiff's allegations here, but suffice it to say that Plaintiff claims he was given the runaround by SLS, was not assigned a single point of contact ("SPOC") as required under the Homeowners Bill of Rights ("HOBR"), and was asked to resubmit documents on multiple occasions that he claims he already submitted. On more than one occasion, Plaintiff's application for loan modification was closed and he was asked to reapply, which he did. Plaintiff alleges that at least as of the date of his FAC, he still had not received a final determination of his most recent loan modification application, which he submitted in May or June of 2016.[1] Still, SLS recorded a Notice of Default ("NOD") in June 2016, and a Notice of Trustee's Sale in October 2016. Plaintiff filed the pending action in August 2016, and filed his FAC in November 2016. The FAC alleges violations of Cal. Civil Code §§ 2923.7 and 2924.10 (the HOBR), and 15 U.S.C. § 1691(a) (the Equal Credit Opportunity Act).

Since the filing of the FAC, it appears SLS is no longer the servicer of Plaintiff's loan and has not been since December 2016. It also appears Plaintiff is aware of this fact, because in January 2017, Plaintiff submitted a loan modification application to Shellpoint Mortgage Servicing ("Shellpoint"), the current loan servicer. Shellpoint denied that application in May 2017. Plaintiff appealed, which appeal was denied at least as of July 2017. Under the June 2016 NOD and October 2016 Notice of Trustee's Sale filed by SLS, Shellpoint then moved forward with foreclosure proceedings. The Trustee's Sale was scheduled for November 6, 2017, at 10 a.m.

///

---

[1] The Court is unclear of the exact date. Plaintiff's FAC provides that he submitted his most recent application in May 2016 (FAC at 4), whereas his Application for TRO provides that it was submitted June 30, 2016 (TRO App. at 4).

| | |
|---|---|
| 1 | **STANDARD** |
| 2 | |
| 3 | The purpose of a temporary restraining order is to preserve the status quo |

The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction. See Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974) (temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"); see also Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006); Dunn v. Cate, No. CIV 08-873-NVW, 2010 WL 1558562, at *1 (E.D. Cal. April 19, 2010).

Issuance of a temporary restraining order, as a form of preliminary injunctive relief, is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such a remedy. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In general, the showing required for a temporary restraining order and a preliminary injunction are the same. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). The propriety of a TRO hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in plaintiffs'

favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

**ANALYSIS**

Applying the alternate sliding scale test, the Court finds that issuance of a TRO is appropriate to preserve the status quo pending a hearing on Plaintiff's request for preliminary injunction. Plaintiff has established a likelihood of irreparable harm to the extent that the sale of his home was scheduled for November 6, 2017. Similarly, the balance of hardships tips sharply in Plaintiff's favor because if the sale had not been enjoined, Plaintiff would have lost his home of twenty years whereas issuance of this TRO simply means Defendant will have to wait to foreclose until the Court has determined—after reviewing additional briefing from the parties—that foreclosure is appropriate. A TRO in this case is in the public's interest as it is being used to ensure compliance with federal laws designed to protect the public.

As for the last factor, the Court finds that serious questions as to the merits of Plaintiff's claims have sufficiently been raised. On November 3, 2016, the Court dismissed Plaintiff's first, second, and fourth causes of action without prejudice. Therein, the Court found that Plaintiff had adequately alleged material violations of the HOBR[2] but dismissed his claims because—at that time—Plaintiff did not allege that foreclosure was pending and therefore was not entitled to the injunctive relief he sought. Because the foreclosure sale is now indeed pending, that is no longer a hurdle Plaintiff must overcome.

///

---

[2] The Court also noted that with regard to Plaintiff's third loan modification application, Plaintiff had not alleged a material violation of § 2923.7 because the application was still pending. Though Plaintiff maintains in his FAC that he has not heard back from SLS, because servicing has since been transferred to Shellpoint who denied an application and a subsequent appeal, it seems Plaintiff has now sufficiently alleged a material violation with respect to the "pending" application as well.

Despite this likelihood of success on the merits, however, the Court is unclear whether injunctive relief is available where, as here, the foreclosing servicer is not the Defendant in this action. The Court also questions the exact nature of the relationship between SLS, its counsel, and Shellpoint, and is unaware of whether Shellpoint was provided notice of the TRO. Relatedly, Plaintiff sought and obtained review of a subsequent loan modification application by Shellpoint prior to Shellpoint proceeding with foreclosure, which process may impact his ability to enjoin the sale of his home. On the other hand, Plaintiff's argument that SLS's mishandling of his previous applications left him worse off when Shellpoint began its review is well taken.

For those reasons, the Court finds that serious questions as to the merits of Plaintiff's claims have been raised, but the Court is not convinced that an injunction should issue. The TRO is therefore granted, and the parties are ordered to more fully brief this matter—with particular attention to the questions described above—in advance of the preliminary injunction hearing, set by Minute Order for November 27, 2017 (ECF No. 41).[3]

## CONCLUSION

For the reasons set forth above, Plaintiff's application for temporary restraining order (ECF No. 35) is GRANTED. This matter is set for a preliminary injunction hearing on November 27, 2017, at 10:30 a.m. in Courtroom 7. Plaintiff's motion for preliminary injunction shall be filed not later than November 13, 2017. Defendant's opposition shall be filed not later than November 20, 2017, and Plaintiff's reply—if any—by

///

///

---

[3] Additionally, the Court notes that the bulk of Plaintiff's application focuses on Defendant's alleged dual tracking, but Plaintiff's complaint only alleges violations of the portions of the HOBR pertaining to assignment of an SPOC and acknowledgement of applications. Plaintiff has raised serious questions regarding the merits of his SPOC claim sufficient to obtain this TRO, but the Court is left wondering whether Plaintiff intends to allege dual tracking in his FAC.

November 23, 2017.  The parties are encouraged to focus on the questions identified by the Court, but may raise any relevant arguments in their briefs.  No bond shall be required.

IT IS SO ORDERED.

Dated:  November 8, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE