UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL STINSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SPECIALIZED LOAN SERVICING, LLC; and Does 1-50, inclusive,<br><br>Defendants. | No. 2:16-cv-01903-MCE-GGH<br><br>**MEMORANDUM AND ORDER** |

Presently before the Court is Plaintiff Michael Stinson's ("Plaintiff") Motion for Preliminary Injunction seeking to prevent the foreclosure sale of his home located at 1780 Birchwood Lane in Tracy, California. Plaintiff filed an application for Temporary Restraining Order ("TRO") on October 31, 2017, and, with the sale of his home scheduled for Monday, November 6, the Court granted Plaintiff's request by Minute Order on November 3 and by written Memorandum and Order on November 8, 2017. ECF Nos. 35, 40, 42. The November 8 written Order set a Preliminary Injunction hearing for November 27. Pursuant to the Court's briefing schedule, Plaintiff filed the present Motion for Preliminary Injunction on November 13, and Defendant Specialized Loan Servicing, LLC ("SLS") filed an Opposition on November 20. ECF Nos. 43 and 46. On review of the party's filings and pursuant to Local Rule 230(g), the Court submitted the matter and vacated the November 27, 2017, hearing by Minute Order on November 22,

1

2017. ECF No. 47. The Minute Order provided that a written order on Plaintiff's Preliminary Injunction would issue, and that written Order follows here.

**BACKGROUND**

According to Plaintiff's First Amended Complaint ("FAC"), SLS serviced Plaintiff's already existing home loan as of, at least as is relevant here, December 2014. In or around that time, Plaintiff sought a loan modification with SLS. The Court will not recite all of Plaintiff's allegations here, but suffice it to say that Plaintiff claims he was given the runaround by SLS, was not assigned a single point of contact ("SPOC") as required under the Homeowners Bill of Rights ("HOBR"), and was asked to repeatedly resubmit documents on multiple occasions. In more than one instance, Plaintiff's application for loan modification was closed and he was asked to reapply, which he did. Plaintiff alleges that at least as of the date of his FAC, he still had not received a final determination of his most recent loan modification application, which he submitted in May or June of 2016. Still, SLS recorded a Notice of Default ("NOD") in June 2016 and a Notice of Trustee's Sale in October 2016. Plaintiff filed the pending action in August 2016 and filed his FAC a few months later in November. The FAC alleges violations of California Civil Code §§ 2923.7 and 2924.10 (the HOBR), and 15 U.S.C. § 1691(a) (the Equal Credit Opportunity Act or "ECOA").

Since the filing of the FAC, however, SLS transferred servicing of Plaintiff's loan to Shellpoint Mortgage Servicing ("Shellpoint"). It appears this transfer took place in December 2016, and that Plaintiff thereafter submitted a loan modification application to Shellpoint, the current loan servicer, in January 2017. Shellpoint denied that application in May 2017. Plaintiff appealed, and the denial was affirmed in or before July 2017.

Under the June 2016 NOD and October 2016 Notice of Trustee's Sale filed by SLS, Shellpoint then moved forward with foreclosure proceedings. The Trustee's Sale was originally scheduled for November 6, 2017, until the Order from this Court granting

Plaintiff's TRO application temporarily enjoined that sale pending the Court's present ruling.

**STANDARD**

"A preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 690 (2008). "[T]he purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits." McCormack v. Hiedeman, 694 F.3d 1004, 1019 (9th Cir. 2012). A plaintiff seeking a preliminary injunction must establish that he is (1) "likely to succeed on the merits;" (2) "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) "an injunction is in the public interest." Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008). "If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied." Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010) (citing Winter, 555 U.S. at 22). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)). A district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and shows that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiff's favor. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

**ANALYSIS**

In issuing the TRO, the Court found that Plaintiff had established a likelihood of irreparable harm in the impending sale of his primary residence, that the balance of hardships tipped sharply in Plaintiff's favor, and that a TRO was in the public's interest as it was being used to ensure compliance with laws designed to protect the public. The Court also found that serious questions as to the merits of Plaintiff's claims had sufficiently been raised, specifically noting that Plaintiff's FAC set forth viable causes of action, but that the Court had questions concerning—inter alia—the availability of injunctive relief where, as here, the foreclosing servicer is not the Defendant in this action. The Court therefore set a briefing schedule for Plaintiff's request for preliminary injunction and directed the parties to pay particular attention in their briefs to the questions set forth in the Court's Order. See ECF No. 42. On review of the parties' briefing in connection with Plaintiff's request for preliminary injunction, the Court concludes that Plaintiff has failed to establish any likelihood of success on the merits of his claims under either standard set forth above.[1]

As a preliminary matter, while the bulk of Plaintiff's motion is focused on alleged dual tracking by SLS, Plaintiff has not actually pled a dual tracking claim in his FAC. Rather, Plaintiff only sets forth violations of sections 2923.7 and 2924.10 of the HOBR (pertaining to assignment of an SPOC and acknowledgment of receipt of loan modification application, respectively) and the ECOA. Because Plaintiff's motion is silent on his causes of action under both the ECOA and Section 2924.10, however, the Court finds no likelihood of success on the merits of those claims and focuses the following analysis on Plaintiff's potential claim for dual tracking and/or his claim for failure to assign an SPOC. To that end, the Court concludes that even if Plaintiff were to amend

---

[1] Despite being given multiple opportunities, Plaintiff has failed to provide any support for his apparent contention that the Court can properly enjoin Shellpoint based on SLS's alleged HOBR violations. In any event, the Court need not reach that issue because, even if injunctive relief were proper under the present circumstances, Plaintiff has failed to establish a likelihood of success on the merits of his claims against SLS.

his complaint to include a dual tracking cause of action, the Court's ruling would not change because—as set forth below—SLS has provided ample evidence to refute Plaintiff's arguments.

With regard to these remaining claims, Plaintiff specifically asserts that: (1) he was approved for a trial payment plan in early 2015, but after making two timely payments, his trial plan was cancelled without warning in June 2015 because certain documents had expired; (2) he thereafter completed a new application, which was also closed without warning in January 2016; (3) he then submitted another new application in May 2016, for which he was assigned the "Customer Resolution Department" with its general 1-800 number as his SPOC; and (4) despite many attempts to contact his SPOC regarding his May application, Plaintiff has been unable to speak with anyone and has yet to receive a decision on the merits of his application. A Notice of Default was recorded in the end of June 2016, and a Notice of Trustee Sale recorded in October 2016. Plaintiff argues that these allegations amount to a violation of the HOBR's prohibition against dual tracking and, presumably, a violation of the requirement that servicers assign applicants an SPOC.

On the other hand, Defendant has submitted extensive evidence—most of which coincides with Plaintiff's version of the facts—in support of its position that no violations actually occurred. Taken together, Defendant's exhibits[2] establish the following:

> (1) Plaintiff was approved for a loan modification trial plan in January 2015 and was assigned "Billy" as his SPOC in May. Plaintiff either withdrew from the trial or the trial was otherwise cancelled in June 2015,[3] Exs. F-J;
>
> (2) Plaintiff submitted a new application in July 2015, and Defendant thereafter mailed an acknowledgment of receipt and assigned "Katie" as Plaintiff's SPOC; that application was denied later that month, Exs. K-N.

---

[2] All references to exhibits are to the exhibits attached to the Declaration of Cynthia Wallace ISO Defendant SLS's Opposition to Plaintiff's Application for Preliminary Injunction ("Wallace Decl."), ECF No. 46-1.

[3] Exhibit J provides that Plaintiff withdrew from the trial plan; Defendant has provided that the trial was cancelled because Plaintiff defaulted on his third trial payment. Defendant contends that Plaintiff was informed of the basis for the cancelation by phone, Wallace Decl. at ¶ 27.

> (3) Plaintiff applied again in September 2015, was thereafter sent an acknowledgment and two separate SPOC assignments, Exs. O-S. The second SPOC, assigned by a letter dated October 7, 2015, was "Billy," Ex. R. SLS sent a denial letter in December 2015, Ex. S.
>
> (4) Plaintiff submitted a new application again in January 2016, Ex T. SLS thereafter mailed two separate acknowledgments of receipt to Plaintiff, dated just one day apart on February 1 and 2, 2016, Exs. U-V. Though Defendant claims that the second of these letters assigned "Billy" as Plaintiff's SPOC, the letter appears to be nothing more than a second acknowledgment, directing Plaintiff to contact the Customer Resolution Department with questions, see Ex. V. The letter is, however, signed by "Billy," Plaintiff's previously-assigned SPOC, id. That application was denied by letter in February 2016, Ex. W.
>
> (5) Plaintiff applied again in May 2016, was asked for additional documentation, and denied by letter later that month, Exs. X-Z.

The parties seem to agree that SLS recorded a Notice of Default in the end of June 2016, and a Notice of Trustee Sale in October 2016. They also agree that SLS subsequently transferred servicing to Shellpoint in December 2016, and Plaintiff thereafter filed another loan modification application with Shellpoint, which was denied in May 2017, appealed, and affirmed in July 2017. Shellpoint then moved forward with foreclosure.

Based on the timeline described above—which is supported by Defendant's extensive exhibits—the Court finds Plaintiff has failed to establish any likelihood of success on the merits of his remaining claims. Indeed, the numerous letters from SLS show that while communication may not have been perfect between SLS and Plaintiff, Plaintiff was provided multiple letters in response to each of his applications—including letters assigning an SPOC—and each application was timely denied by written correspondence.

While it appears Plaintiff asserts he was not assigned an SPOC in connection with his January 2016 and/or May 2016 applications, the correspondence that follows those applications make clear that "Billy" was Plaintiff's continuing SPOC from his initial assignment in October 2015, until loan servicing was transferred to Shellpoint in

December 2016. Nothing in the HOBR requires assignment of a new SPOC with each application, and nothing indicates that "Billy's" assignment otherwise ended at any point. To the extent Plaintiff contends that his assigned SPOC was not communicative at any given time, Plaintiff has offered no evidence to support such a contention. Rather, it appears from SLS's many letters (not to mention the many phone calls described in the declaration of Ms. Wallace) that Plaintiff was informed of the status of his various applications and that Plaintiff's failure to complete his trial plan was through no fault of Defendant. See, e.g., Ex. H (setting forth trial payment amounts and due dates in March, April, and May 2015). Consequently, Plaintiff has failed to establish a likelihood of success on the merits of his claim under Section 2923.7 of the HOBR.

As for any claim of dual tracking, Plaintiff's final loan modification application of May 2016 was denied in writing later that month. SLS subsequently recorded a Notice of Default in the end of June 2016, and a Notice of Trustee Sale in October 2016. Because Plaintiff's application had been denied the month prior to SLS recording the NOD, the Court cannot find any evidence that SLS engaged in dual tracking.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction, ECF No. 43, is DENIED, and the TRO issued by the Court on November 3, 2017, ECF Nos. 40, 42, is VACATED.

IT IS SO ORDERED.

Dated: November 30, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE